IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Reassure America Life Insurance Company, | ) | |
| | ) | C/A No. 2:09-CV-03353-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Marlene C. Schuster, Helen Schuster, and | ) | |
| Marie C. Infante, | ) | |
| | ) | |
| Defendants. | ) | **ORDER** |
| _____ | ) | |
| Helen Schuster, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Marlene C. Schuster as Personal Representative | ) | |
| for the Estate of Gerald D. Schuster, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant Marlene Schuster's (Marlene), as personal representative for the estate of Gerald Schuster (Gerald), motion to strike defendant Helen Schuster's (Helen) third-party complaint. Marlene argues that, pursuant to Federal Rule of Civil Procedure 14(a)(4), Helen's third-party complaint does not contain a proper Rule 14 claim. For the reasons set forth below, the court grants the motion to strike.

**I. BACKGROUND**

Plaintiff Reassure America Life Insurance Company (Reassure) brought this declaratory judgment action because it is subject to competing claims for life insurance

1

benefits in the amount of $200,000 payable because of Gerald's death. Helen was married to Gerald from 1952 until their divorce on April 26, 1978. Defendant Marie C. Infante (Marie) was married to Gerald from June 4, 1978, until their divorce on April 16, 1992. Marlene married Gerald after his divorce from Marie and remained married to Gerald until his death on July 9, 2009.

Gerald purchased a $500,000 term life insurance policy, Policy Number T63139, from The Midland Mutual Life Insurance Company on February 20, 1993. In November 1994, the beneficiaries under Policy Number T63139 were changed. At that time, Marie was listed as an irrevocable beneficiary in the amount of $100,000, and Helen and Marlene were each 40% beneficiaries, though they were not listed as irrevocable beneficiaries.

In March 1995, the beneficiaries were again changed. At that time, Marie was listed as a beneficiary in the amount of $100,000, though she was no longer an irrevocable beneficiary, Helen was listed as an irrevocable beneficiary in the amount of $200,000, and Marlene was listed as a 40% beneficiary in the amount of $200,000.

On January 25, 1996, The Midland Mutual Life Insurance Company informed Marie that she was designated as a beneficiary of 20% of the life insurance proceeds under Policy Number T63139, but that she was not an irrevocable beneficiary. On March 20, 2001, Gerald converted the term life insurance policy to a Universal Life Policy, Policy Number U90641, in the face amount of $300,000. Helen was named an irrevocable beneficiary of 50% of the death benefit, which at the time of issue would have been $150,000, and Marlene was named beneficiary of the remaining 50% of the death benefit. Marie was not listed as a beneficiary under this policy.

On December 18, 2001, The Midland Mutual Life Insurance Company merged into and became part of Reassure. On November 10, 2005, Gerald decreased the death benefit to $200,000. On June 19, 2008, Gerald changed the beneficiary to Marlene as the sole beneficiary. Marie and Helen were no longer listed as beneficiaries under this policy.

After Gerald's death, Reassure received conflicting claims by Marlene and Helen. Ultimately, Reassure distributed 50% of the life insurance proceeds (50% of the death benefit plus applicable interest), or $100,778.08, to Marlene and 50% of the life insurance proceeds (50% of the death benefit plus applicable interest), or $100,778.08, to Helen.

In September 2009, after the distribution of the life insurance proceeds, Marlene claimed that she was entitled to 100% of the proceeds as the sole beneficiary under the policy and that, at most, Helen was only entitled to $25,000 as a result of an agreement reached between Gerald and Helen. Also in September 2009, after the distribution of the life insurance proceeds, Helen claimed that she was entitled to an additional $50,000 under the policy. Reassure communicated with Marlene and Helen and requested they return the life insurance proceeds paid to them and/or not spend any of the life insurance proceeds until a resolution could be reached. On October 3, 2009, Marlene returned to Reassure $100,778.08. Helen has not returned the life insurance proceeds paid to her.

The instant motion to strike concerns the third-party complaint Helen filed against Marlene, as the personal representative of Gerald's estate. The property settlement agreement incorporated into Helen and Gerald's 1978 divorce decree provided that Gerald support Helen until the first of the following events: 1) Helen's remarriage; 2)

3

Helen's death; or 3) expiration of two months following Gerald's death. This agreement required Gerald to maintain life insurance with a face value of $150,000 with Helen as beneficiary until the duty to support Helen under the terms of the agreement ended. The agreement also provided that the insurance carrier writing the insurance was required to notify Helen, in writing, upon the occurrence of events jeopardizing Helen's recovery under such policy. Helen's Compl. ¶¶ 8-11.

In her third-party complaint for declaratory judgment, Helen "seeks a determination of the scope and nature of her rights as a creditor of the Estate of Gerald Schuster pursuant to the Voluntary Separation and Property Settlement Agreement signed by Helen Schuster and Gerald Schuster and incorporated into the Divorce Decree ordered by the Circuit Court for Montgomery County, Maryland on April 26, 1978." Helen's Compl. ¶ 1. According to Helen, Gerald's estate is liable to her for, among other things, any liability Helen may be found to have to Reassure. Helen's Compl. ¶ 4. In addition to asking the court to consider the insurance issue, Helen also requests that the court award her $3,200 in alimony that she is owed for the two months following Gerald's death, as well as attorneys' fees pursuant to a provision of the divorce settlement agreement. Helen's Compl. ¶¶ 27, 29.

Marlene, as personal representative of Gerald's estate, has moved to strike Helen's third-party complaint. Marlene argues that this suit involves beneficiaries under a life insurance policy and their respective rights, not the unrelated matters Helen wishes to raise against Gerald's estate. According to Marlene, Helen's claim against the estate should be handled in probate court, where Helen has already filed a claim.

4

## II.  DISCUSSION

Rule 14(a)(1) states that a defendant may bring a third-party complaint against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  "[T]he decision to permit joinder [under Rule 14] rests with the sound discretion of the trial court." Carolina Asphalt Paving, Inc. v. Balfour Beatty Const., Inc., 225 F.R.D. 522, 524 (D.S.C. 2004) (citations omitted).  "Presumably a court, called upon to exercise its discretion as to impleader, must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the [non-moving party] might suffer from complications of the case." Id. (citation omitted).

Helen seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides that district courts "may declare" the rights of interested parties.  "This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998) (citing Brillhart v. Excess Ins. Co., 316 U.S. 491, 494 (1942)).  As the Fourth Circuit has noted, "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." Kapiloff, 155 F.3d at 493 (citations omitted).

"But district courts are not without guidance in exercising this discretion." Id. The Fourth Circuit has explained that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Id. (citations omitted).  "At the same time, whenever a parallel proceeding is pending in state court, district courts must also take

into account 'considerations of federalism, efficiency, and comity.'" Id. (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994)). To assist district courts in balancing the state and federal interests when a parallel state action is pending, the Fourth Circuit has articulated four factors for consideration: "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere procedural fencing, in the sense that the action is merely the product of forum-shopping." Id. at 493-94 (citing Nautilus, 15 F.3d at 377).

Though none of the parties discussed in their briefs the court's discretion to hear Helen's declaratory judgment claim, the court finds that its discretion is best exercised in this case by granting Marlene's motion to strike. In the court's view, the first three factors noted above are the most important in this case, and they weigh heavily in favor of granting Marlene's motion. Probate matters rest almost exclusively with the state court system. Helen has already filed a claim in probate court alleging the same essential facts she has alleged in her third-party complaint. Resolving conflicting claims to a decedent's estate is one of the main functions of the probate court, and this court has no doubt that the probate court is a much better forum to handle this claim. Moreover, at its core, this action is really about determining the parties' rights under the insurance policy and not about Gerald's estate's potential liability to Helen. Though Helen's rights under the policy could be related to the estate, this court does not need to determine the estate's liability to resolve the issue of who has what right under the policy. Helen's claim

6

against the estate is best pursued in probate court. Therefore, in exercising its discretion to hear declaratory judgment actions, the court declines Helen's invitation to resolve issues that will achieve a full and fair resolution in the probate court.[1]

Helen also advances a brief argument that Gerald's estate is a necessary party under Rule 19(a)(1)(B), which requires joinder of a party who claims an interest in the action and where resolution of the action without the party would impair or impede the party's ability to protect that interest. According to Helen, the estate must be joined because the divorce settlement agreement provides for Helen's attorneys' fees to be paid by the estate if she prevails in this action. Thus, according to Helen, the estate must either participate in this action or waive its ability to contest the issue of attorneys' fees. However, it appears to the court that there is another option—this issue can be decided in probate court. As Marlene has expressed no concern over this issue, the court is hard-pressed to view the estate as a necessary party in this action.

---

[1] Helen raises the issue of the "probate exception" to federal jurisdiction and argues that it poses no obstacle to the court's resolving her third-party complaint. The probate exception is "'one of the most mysterious and esoteric branches of the law of federal jurisdiction.'" Ashton v. Josephine Bay Paul and C. Michael Paul Foundation, Inc., 918 F.2d 1065, 1071 (2d Cir. 1990) (quoting Dragan v. Miller, 679 F.2d 712, 713 (7th Cir. 1982) (Posner, J.), cert. denied, 459 U.S. 1017 (1982)). "Its core proposition, if any, seems to be that 'a federal court has no jurisdiction to probate a will or administer an estate.'" Id. (quoting Markham v. Allen, 326 U.S. 490, 494 (1946)). "It is thus well settled that a federal court may not probate a will, administer an estate, or entertain an action that would interfere with pending probate proceedings in a state court or with a state court's control of property in its custody." Id. On the other hand, "the probate exception does not prevent a federal court from adjudicating rights to property in an estate 'where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.'" Id. (quoting Markham, 326 U.S. at 494). It appears to the court that the "probate exception" probably would not prevent the court from resolving Helen's claim against the estate if it chose to do so; however, as the court has explained, the circumstances in this case dictate that the court decline to consider Helen's third-party claim.

## III. CONCLUSION

For the foregoing reasons, the court grants Marlene's motion to strike Helen's third-party complaint.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**July 22, 2010
Charleston, South Carolina**